The Honorable Benjamin H. Settle

1
2
3
4
5
6
7        UNITED STATES DISTRICT COURT FOR THE
         WESTERN DISTRICT OF WASHINGTON
8                    AT TACOMA
9
10
11   UNITED STATES OF AMERICA,          NO. CR18-5141 BHS

12                  Plaintiff,

13          v.

14   DONNIE BARNES, SR.,                **GOVERNMENT'S TRIAL BRIEF**

15                  Defendant.

16

17       The United States of America, by and through Brian T. Moran, United States

18   Attorney for the Western District of Washington, and Matthew P. Hampton and Lyndsie

19   R. Schmalz, Assistant United States Attorneys, files this Trial Brief.

20                    **I.       INTRODUCTION**

21       The defendant, Donnie Barnes, Sr., is charged with one count of production of

22   child pornography or, in the alternative, attempted production of child pornography, in

23   violation of 18 U.S.C. § 2251(a), (e); one count of distribution of child pornography or, in

24   the alternative, attempted distribution of child pornography, in violation of 18 U.S.C.

25   § 2252(a)(2), (b)(1); and one count of possession of child pornography, in violation of

26   18 U.S.C. § 2252(a)(4)(B), (b)(2).  Dkt. 13.

27       Trial: Trial is scheduled for October 29, 2019.  Assistant United States Attorneys

28   Matthew P. Hampton and Lyndsie R. Schmalz will represent the government.  Homeland

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Security Investigations ("HSI") Special Agent Reese Berg will be present at counsel
2  table.

3      <u>Witnesses</u>: The United States expects to call four to six witnesses. The
4  government's case-in-chief is expected to last approximately two to three days.

5      <u>Exhibits</u>: The United States will offer fewer than 100 exhibits during its case-in-
6  chief. Some exhibits are contraband and consist of inherently graphic images and videos
7  of children being sexually exploited and abused. These contraband files have been made
8  available on multiple occasions to defense counsel for inspection, and defense counsel
9  have had the opportunity to examine the other evidence the government intends to offer
10  at trial. The United States has provided an exhibit list to the Court and defense counsel
11  and will file that list with the Court in advance of trial. The United States will add to its
12  exhibit list as needed as trial preparation continues. To date, the defense has not provided
13  an exhibit list, and defense counsel has indicated that he has not yet identified any
14  exhibits to be offered at trial.

15      <u>Jury Trial</u>: Defendant previously suggested a desire to waive jury trial and have a
16  bench trial. The United States will not consent to the jury waiver and will insist, as is its
17  right, on a trial by jury.

18          **II.    FACTUAL BACKGROUND**

19      Barnes is charged with production, distribution, and possession of child
20  pornography. In short, Barnes took sexually explicit photographs and videos of his
21  girlfriend's eleven-year-old daughter ("J.T."), and distributed those photographs by
22  posting them on the internet for others to view. He also possessed videos and images
23  depicting children being sexually abused on his personal cell phone and a thumb drive
24  that was found in his bedroom, which he obtained from another individual in exchange
25  for some of J.T.'s underwear.

26      **A.    Undercover Contact and Subsequent Identification of Barnes**

27      On February 11, 2018, a detective with the Queensland, Australia, Police Service
28  ("QPS"), noticed a suspicious album on a foreign public photo-sharing website known to

Government's Trial Brief – 2
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

child exploitation investigators as a common venue for child pornography.  The album was posted by username "TICK10TO12TOCK" and contained multiple photographs, one of which was a close-up photograph of the genital area of a prepubescent female.  The officer commented on these images and, the next day, received an email in response from "dobsr@me.com," an email address associated with the name "Donnie Barnes."  In the email exchange that followed, Barnes divulged that the images were of his 11-year-old "stepdaughter," whom he characterized as "sexy," "flirty," and "fun to play with."

The QPS detective obtained a list of IP logins for the "TICK10TO12TOCK" account from the photo-sharing website, which led him to refer the matter to investigators in the United States.  Two of these IP addresses resolved to two different homes in Pierce County, one in Spanaway and one in Tacoma.  According to Comcast, the subscriber at the Spanaway residence was K.T., J.T.'s mother and Barnes's girlfriend.

**B.     Seizure of Electronic Devices and Interview of Barnes**

Investigators obtained a search warrant for the Spanaway address, which they executed on March 6, 2018.  Agents encountered Barnes at the home during the search and, during a post-*Miranda*, recorded interview, Barnes admitted taking sexually explicit photos of J.T. and sharing them on the internet.  He told agents, among other things:

1) He had taken nude photographs of J.T. using an iPhone 6 Plus (his old phone), including photographs that he posted to a photo-sharing website;

2) His username for the photo-sharing website was "TICK10TO12TOCK," and the account was associated with his email address, "dobsr@me.com";

3) He had taken part in the email conversation with the QPS detective, described above, regarding the photographs of J.T. that he had posted to the website; and

4) He had recently gotten a new iPhone 8S, which would still have nude photographs of J.T. saved onto it.

During the search, Agents found Barnes's iPhone 8 Plus in the kitchen, just where he told them it would be.

Barnes also admitted that he had responded to an ad on Craigslist, where an individual with the user name "Mr. Aloha" wanted to purchase "little girls'" panties.  Barnes met with "Mr. Aloha" behind a restaurant in Tacoma, where he provided the man

Government's Trial Brief – 3
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

with two pairs of J.T.'s underwear, which he had taken from the dirty laundry, in exchange for a thumb drive containing three videos of children being raped.  Barnes acknowledged viewing these videos and told agents where they would find this thumb drive in his home.  Agents found a Lexar thumb drive in the location Barnes said they would.

Agents also interviewed K.T., who recognized certain household items visible in the photographs that Barnes had posted online.  She confirmed that her daughter, J.T., has a scar on her arm that is identical to a scar shown on the child in one of those photographs.  Finally, agents found several pieces of clothing and other household items that matched items depicted in the photos posted by Barnes.

## C.    Search of Barnes' Electronics

After the search, investigators conducted a forensic review of Barnes' iPhone and the thumb drive recovered from his bedroom.  Both devices contained child pornography, including videos and images of J.T. captured by Barnes and other child sexual abuse material.  HSI Special Agent Gabe Stajduhar created a verified image of the thumb drive.  Analysis of the thumb drive's contents revealed three child rape videos, all with titles consistent with prepubescent children being sexually abused.

Among the videos of J.T. on Barnes's iPhone is a video in which Barnes pulls down J.T.'s underwear while she sleeps and focuses the camera on her exposed genitals.  There were also several apparent screenshots taken by Barnes capturing still images from that video.  It also appears that this video is the source of some of the images of J.T. that Barnes posted to the photo-sharing site.

## III.    ELEMENTS OF THE OFFENSES

## A.    Production (Attempted) of Child Pornography

In Count One, Barnes is charged with producing and attempting to produce child pornography,[1] in violation of Title 18, United States Code, Section 2251(a) and (e).  The

---

[1] Production of child pornography is the colloquial and common description of this offense, but it is also referred to as sexual exploitation of a child.  The latter term is used in the Ninth Circuit's

Government's Trial Brief – 4
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

elements of production of child pornography are as follows:

1.   the defendant knowingly[2] employed, used, persuaded or coerced someone who was under the age of eighteen years to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and

2.   the defendant knew or had reason to know that the visual depiction would be transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce; or the visual depiction was transported or transmitted using any means or facility of interstate and foreign commerce, or produced using materials that had been shipped in interstate or foreign commerce.

Ninth Circuit Model Criminal Jury Instruction 8.181.

The elements of attempted production of child pornography are as follows:

1.   the defendant intended to employ, use, persuade, or coerce a person under the age of eighteen to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and

2.   the defendant did something that was a substantial step toward committing the crime.

*Id.* at 5.3 and 8.181.

At trial, the government will prove that Barnes produced, or attempted to produce, child pornography when he took sexually explicit videos and photographs of J.T.  As explained above, Barnes created videos of himself manipulating J.T.'s clothing to expose her genitals while she slept, which were found on his iPhone.  Additionally, Barnes created sexually explicit photographs of J.T. by creating screenshots of these videos, in which he focused on her exposed genitals.

//

//

---

pattern jury instructions and the parties' proposed instructions, and the terms can be used interchangeably.

[2] Knowledge that a minor is involved is not required, but was alleged in the Indictment, so the government will not object to the inclusion of that requirement as an element of the offense.

Government's Trial Brief – 5
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B.     Distribution (Attempted) of Child Pornography**

In Count Two, Barnes is charged with distributing and attempting to distribute child pornography, in violation of Title 18, United States Code, Section 2252(a)(2) and (b)(1).  The elements of distribution of child pornography are as follows:

1.     the defendant knowingly distributed a visual depiction using any means or facility of interstate or foreign commerce, or that had been shipped or transported in interstate or foreign commerce;

2.     the production of such visual depiction involved the use of a minor engaged in sexually explicit conduct;

3.     the visual depiction was of a minor engaged in sexually explicit conduct;

4.     the defendant knew that the visual depiction was of sexually explicit conduct; and

5.     the defendant knew that at least one of the persons engaged in sexually explicit conduct in the visual depiction was a minor.

Ninth Circuit Model Criminal Jury Instruction 8.184.

The elements of attempted distribution of child pornography are as follows:

1.     the defendant intended to distribute a visual depiction, the production of which involved the use of a minor engaged in sexually explicit conduct, using any means or facility of interstate or foreign commerce; and

2.     the defendant did something that was a substantial step toward committing the crime.

*Id.* at 5.3 and 8.184.

At trial, the government will prove that Barnes knowingly distributed, or attempted to distribute, child pornography when he posted sexually explicit photographs of J.T. on the internet where others could see them.  As explained above, Barnes posted photographs of J.T.'s exposed genitals on a foreign photo-sharing website, where they were seen by the undercover QPS detective.

**C.     Possession of Child Pornography**

In Count Three, Barnes is charged with possessing child pornography, in violation of Title 18, United States Code, Section 2252(a)(4)(B) and (b)(2).  The elements of possession of child pornography are as follows:

1.      the defendant knowingly possessed a matter that the defendant knew contained a visual depiction of a minor engaged in sexually explicit conduct;

2.      the defendant knew the visual depiction showed a minor engaged in sexually explicit conduct;

3.      the defendant knew that the production of such visual depiction involved the use of a minor engaged in sexually explicit conduct; and

4.      the visual depiction had been shipped or transported using any means or facility of interstate or foreign commerce, or in and affecting interstate or foreign commerce or produced using material that had been shipped or transported in or affecting interstate commerce or by any means including a computer.

Ninth Circuit Model Criminal Jury Instruction 8.185 (modified to reflect "means or facility of interstate or foreign commerce" provision of 18 U.S.C. § 2252(a)(4)(B)). The government will also prove that at least one of the visual depictions involved in the offense involved a prepubescent minor, or a minor who had not yet attained 12 years of age.

At trial, the government will prove that Barnes knowingly possessed child pornography on his phone and the thumb drive found in his home. As explained above, Barnes exercised dominion and control over his iPhone and the thumb drive, which both contained images and videos depicting minors engaged in sexually explicit conduct. Moreover, many of these images and videos depict minors that appear to be prepubescent, based on their muscular development, facial features, lack of breast development, and lack of pubic hair.

## IV.    LAW ON THE ELEMENTS OF THE OFFENSES

The charged offenses share several elements. The sections below discuss the meaning and application of those elements, as set out in various statutes and appellate precedents, in the Ninth Circuit and other circuits.

### A.    Definition of a "Minor"

As set out above, Counts 2 and 3 require the government to prove the existence of visual depictions of a "minor" engaged in sexually explicit conduct. Title 18, United

Government's Trial Brief – 7
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

States Code, Section 2256(1) defines a "minor" as a "person under the age of eighteen years." 18 U.S.C. § 2256(1).

### 1. Requirement of Real Children

The term "person" in 18 U.S.C. 2256(1) refers to a real "person" and not an electronically-generated depiction of what appears to be a person. As the Supreme Court has explained in the context of a claim for possession of child pornography, "virtual" child pornography, which does not depict real children but instead shows computer-generated images of "virtual" children, cannot give rise to criminal liability. *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 239–40 (2002). As a result, the government has the burden of proving beyond a reasonable doubt that the visual depictions that are the basis for the charged child-pornography offenses were of actual children. *See United States v. Rearden*, 349 F.3d 608, 613 (9th Cir. 2003).

The government does not, however, need to "pre-screen" or "pre-authenticate" the visual depictions upon which the criminal charges are based in order to show that the children are real. *United States v. Salcido*, 506 F.3d 729, 733 (9th Cir. 2007) (quoting *United States v. Sheldon*, 233 F. App'x 478, 483 (6th Cir. 2007)). Rather, the government may present the visual depictions to the fact-finder, along with proof that those visual depictions show real children. *Id.*

At trial, the government will prove that the visual depictions on Barnes' iPhone and thumb drive show real children. The evidence that the children depicted in the visual depictions are real is overwhelming. It consists of the visual depictions themselves, which show muscle movements that are consistent with those shown by real children, not computer-generated images. The Ninth Circuit has held that the fact-finder may rely on the visual depictions themselves, apart from any expert testimony, in order to find that the children depicted in child pornography are real. *Id.* at 733–34 ("We agree with every other circuit that has ruled on the issue that expert testimony is not required for the government to establish that the images depicted an actual minor."); *see also United States v. Farrelly*, 389 F.3d 649, 654 n.4 (6th Cir. 2004) ("[N]o circuit requires that

Government's Trial Brief – 8
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

expert evidence be introduced to prove the reality of children portrayed in pornographic images."), *superseded by statute on other grounds*, *United States v. Williams*, 411 F.3d 675, 677 n.1 (6th Cir. 2005).  Moreover, the evidence will show that J.T., the subject of a number of the visual depictions produced and distributed by Barnes, is a real child.

   2. <u>Requirement That Minor Be Under the Age of Eighteen</u>

  The government does not need to use expert testimony to establish that a person is under the age of eighteen.  *See United States v. Katz*, 178 F.3d 368, 373 (5th Cir. 1999) (explaining that, in appropriate cases, lay juries can determine without any expert assistance whether a child is under the age of eighteen).

### B. Sexually Explicit Conduct

  All three of the charged counts require proof of a visual depiction that shows a minor engaged in "sexually explicit conduct."  The term "sexually explicit conduct" means actual or simulated: (1) sexual intercourse, including genital to genital contact, oral to genital contact, anal to genital contact, or oral to anal contact, whether between persons of the same or opposite sex; (2) bestiality, (3) masturbation, (4) sadistic or masochistic abuse, or (5) lascivious exhibition of the genitals or pubic area of any person. 18 U.S.C. § 2256(2)(A); Ninth Circuit Model Jury Instruction 8.185.

  Some of the depictions that the government will offer into evidence do not depict sex acts, but instead show the genitalia or pubic area of minors.  The Ninth Circuit has explained that a fact-finder may rely on the non-exhaustive list of factors set out in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), in order to determine whether exhibitions of genitals or pubic areas are "lascivious" and therefore meet the requirements 18 U.S.C. § 2256(2)(A)(v):

  (1) Whether the focal point of the depiction is the child's genitalia or pubic area;

  (2) Whether the setting of the depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

  (3) Whether the child is depicted in an unnatural pose or in inappropriate attire, considering the age of the child;

  (4) Whether the child is fully or partially clothed or is nude;

(5)    Whether the depiction suggests sexual coyness or a willingness to engage in sexual activity;

(6)    Whether the depiction is intended or designed to elicit a sexual response from the viewer.

*United States v. Overton*, 573 F.3d 679, 686-87 (9th Cir. 2009) (explaining that *Dost* factors are "neither exclusive nor conclusive, but operate as merely 'a starting point' for determining whether a particular image is 'so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur'") (quoting *United States v. Hill*, 459 F.3d 966, 971 (9th Cir. 2006)).  "Of course," the *Dost* court noted, "a visual depiction need not involve all of these factors to be a 'lascivious exhibition of the genitals or pubic area.'" 636 F. Supp. at 832.  These factors "are not definitional—nor do they purport to be." *United States v. Rivera*, 546 F.3d 245, 252 (2d Cir. 2008).  "*Dost* recommends that 'the trier of fact should look to' the six enumerated factors, but noted that 'others . . . may be relevant in a particular case.'" *Id.* at 253 (quoting *Dost*, 636 F. Supp. at 832). Generally, however, at least two factors are needed to support a finding of lasciviousness. *See, e.g., United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989), *but see United States v. Wolf*, 890 F.2d 241, 245 & n.6 (10th Cir. 1989) ("We do not hold that more than one *Dost* factor must be present.").

The Ninth Circuit has emphasized the "subjective" nature of the inquiry into whether an image constitutes child pornography.  *United States v. Perkins,* 850 F.3d 1109, 1118 (9th Cir. 2017).  And that subjective test, in the jury trial context, focuses on the intent of the image's creator:  "[L]asciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles." *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987). The relevant question is not whether a child's parent might consider the image of his or her own child to constitute a lascivious display, but instead whether the image was designed to "arouse or satisfy the sexual cravings of a voyeur." *Id.*  "[T]he relevant factual inquiry in this case is not whether the pictures in issue appealed, or were intended to appeal, to [the defendant's] sexual interests but whether, on their face, they

Government's Trial Brief – 10
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   appear to be of a sexual character." *United States v. Kemmerling*, 285 F.3d 644, 646

2   (8th Cir. 2002).  Whether the photographs appealed to a defendant's sexual interests is

3   not dispositive; the question is whether the photographs are designed to elicit a sexual

4   response in the *viewer*.  The "viewer" does not mean the "average viewer" who is, no

5   doubt, uninterested in these photographs, but rather "the pedophile viewer" who may be.

6   *See Dost,* 636 F. Supp. at 832.

7        Notably, the fourth *Dost* factor allows the jury to consider "whether the child is

8   fully or partially clothed, or nude."  636 F. Supp. at 832.  The fact that this is but one of

9   many factors suggests that the degree to which a child is clothed is not dispositive of

10  whether a photograph depicting that child constitutes a "lascivious exhibition."  Even

11  photographs of children acting *innocently—e.g.*, children clothed and sleeping—can

12  become "lascivious" based on the conduct of the person producing the photographs.  *See*

13  *United States v. Johnson,* 639 F.3d 433, 440 (8th Cir. 2011) ("[E]ven images of children

14  acting innocently can be considered lascivious if they are intended to be sexual.");

15  *United States v. Horn,* 187 F.3d 781, 790 (8th Cir. 1999) ("The 'lascivious exhibition' is

16  not the work of the child, whose innocence is not in question, but of the producer or

17  editor of the video."); *cf. United States v. Knox*, 32 F.3d 733, 754 (3d Cir. 1994)

18  ("[N]udity is not a prerequisite for a lascivious exhibition"); *United States v. Hill,* 322 F.

19  Supp. 2d 1081, 1086 (C.D. Cal. 2004) (noting, in dicta, that "an image of a fully-clothed

20  minor engaged in sexual conduct could be lascivious").

21       C.     **Definition of "Knowingly"**

22       All counts in the Indictment require the government to prove that Barnes acted

23  knowingly.  In this case, the government must prove that Barnes knowingly produced,

24  distributed, or possessed child pornography.  Although Barnes need not know the specific

25  content of the material or the actual age of the underage subjects of these depictions, he

26  must have had an awareness, notice, reason to know, or a belief or ground for belief

27  warranting further inspection, that the material contained a visual depiction of a minor

28

Government's Trial Brief – 11
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  engaging in sexually explicit conduct.  *United States. v. Lacy*, 119 F.3d 742, 747 (9th Cir.

2  1997).

3      At trial, the government will prove that Barnes acted knowingly.  The evidence

4  will show that Barnes created videos and photographs in which he manipulated J.T.'s

5  clothing to expose her genitals while she slept.  He then posted the images on a website

6  for others to view and, when contacted by an undercover detective posing as a pedophile,

7  referred to J.T. as "flirty" and "sexy," demonstrating his understanding of the images as

8  sexual in character.  Moreover, with respect to the videos and images of unknown minors

9  being sexually abused that were found on the thumb drive and Barnes' phone, Barnes

10  admitted that he had viewed them and claimed that he believed the children depicted

11  therein to be in their "early teens."

12      **D.  Definition of "Possession"**

13      Count 3 charges Barnes with possession of child pornography.  In order to

14  establish possession, the government must prove "a sufficient connection between the

15  defendant and the [matters containing child pornography] to support the inference that the

16  defendant exercised dominion and control over it."  *United States v. Romm*, 455 F.3d

17  990, 999 (9th Cir. 2006) (quoting *United States v. Carrasco*, 257 F.3d 1045, 1049 (9th

18  Cir. 2001)).  At trial, the Government will prove that Barnes knowingly possessed the

19  child pornography on his phone and the Lexar thumb drive.  In his interview with agents

20  during the execution of the search warrant on his residence, Barnes described the contents

21  of the thumb drive and directed agents to the locations where his phone and the thumb

22  drive were recovered and seized.

23      **E.  Interstate/Foreign Commerce Nexus**

24      The federal child pornography statutes contain an "interstate nexus" requirement.

25  These requirements can be satisfied in various alternative ways, such as (1) showing that

26  the images actually crossed state lines; (2) showing the use of a means or facility of

27  interstate commerce to obtain, produce, or distribute the images; or (3) establishing that

28  the material on which an image was stored had previously moved from one state to

Government's Trial Brief – 12
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  another, or between the United States and a foreign country.  In this matter, the

2  government can establish that (1) the material on which the images and videos containing

3  child pornography were produced and stored had previously moved between the United

4  States and a foreign country (China), and (2) Barnes distributed the images of J.T. on the

5  photo-sharing website using a means of interstate commerce, the internet.

6  First, 18 U.S.C. §§ 2251 and 2252(a)(4)(B) criminalize the production or

7  possession of child pornography that has been shipped or transported using any means or

8  facility of interstate or foreign commerce, in interstate or foreign commerce, or was

9  produced using materials that had been shipped or transported in interstate or foreign

10 commerce.  To meet its burden, the United States can prove the nexus element if the jury

11 finds that an image of child pornography crossed between one state and another or

12 between the United States and a foreign country or was transmitted over the internet.  It is

13 also sufficient for the government to prove the material on which an image was stored

14 had previously moved from one state to another, or between the United States and a

15 foreign country.  Courts have held that storage of child pornography on devices

16 manufactured outside the United States is sufficient to satisfy the "produced using

17 materials requirement.  *See e.g.*, *United States v. Mugan*, 441 F.3d 622, 628 (8th Cir.

18 2006) (concluding that storage of offending images on electronic media storage

19 previously transported in interstate commerce is sufficient for a Section 2251(a)

20 conviction); *United States v. Zimmerman*, 529 F. Supp. 2d 778, 781 (S.D. Tex. 2007)

21 (sustaining a conviction under Section 2251 where the images of child pornography the

22 defendant produced were found on CDs that traveled in interstate commerce).  This prong

23 of the statute is satisfied by showing that the Defendant possessed, copied, or

24 downloaded images onto a computer or other form of electronic media that was not

25 produced in the state of Washington.  *United States v. Schene*, 543 F.3d 627, 639 (10th

26 Cir. 2008) ("[E]ach 'image of child pornography' had been copied or downloaded to [the

27 defendant]'s hard drive in one capacity or another, and was therefore 'produced using

28

Government's Trial Brief – 13
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  materials that have been mailed, or shipped or transported in interstate or foreign

2  commerce.'" (quoting 18 U.S.C. § 2252(a)(4)(B))).

3       Here, the government will offer evidence demonstrating that the iPhone and thumb

4  drive upon which the Defendant possessed child pornography had been manufactured

5  outside of the state of Washington and, therefore, had traveled in interstate or foreign

6  commerce.  In particular, the parties will be entering a stipulation establishing precisely

7  these facts.  Importantly, the government does not have to prove that Barnes personally

8  transported the material across a state line, or that Barnes knew that it had previously

9  crossed a state line.  *See United States v. Guagliardo,* 278 F.3d 868, 871 (9th Cir. 2002)

10  (upholding a conviction where jurisdiction was premised on the defendant having copied

11  child pornography onto computer disks that had been made overseas).

12       Second, transmission of images by means of the internet constitutes transportation

13  in interstate commerce.  It is well established that the internet is a facility of interstate

14  commerce.  *United States v. Schaff*, 454 Fed. App'x 880, 883 n.1 (11th Cir. 2012)

15  ("Because the internet is a means or facility of interstate commerce, evidence that the

16  defendant used the internet to obtain child pornography is sufficient to obtain a

17  conviction under the new version of the statute, even without proof of an actual interstate

18  transmission."); *United States v. Barlow*, 568 F.3d 215, 220 (5th Cir. 2009) ("[I]t is

19  beyond debate that the Internet and email are facilities or means of interstate

20  commerce."); *United States v. Havlik*, 710 F.3d 818, 824 (8th Cir. 2013) (finding that

21  evidence that defendant downloaded child pornography from the internet was sufficient

22  to satisfy the jurisdictional element of 18 U.S.C. § 2252(a)(4)(B), as "the Internet is an

23  instrumentality and channel of interstate commerce").

24       The evidence will establish that Barnes used the internet to upload images of child

25  pornography, thus implicating the interstate commerce clause.  Accordingly, Barnes' use

26  of the internet to commit his crimes satisfies the interstate nexus requirements, regardless

27  of whether images or communications actually crossed state lines.  *See United States v.*

28  *Wright*, 625 F.3d 583, 600 (9th Cir. 2010) (noting that broad interstate nexus language in

Government's Trial Brief – 14
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    federal child pornography statutes reaches some "wholly intrastate conduct"), *superseded*
2    *by statute on other grounds*, *United States v. Brown*, 785 F.3d 1337, 1350–51 (9th Cir.
3    2015); *United States v. MacEwan*, 445 F.3d 237, 244 (3d Cir. 2006) ("[B]ecause of the
4    very interstate nature of the Internet, once a user submits a connection request to a
5    website server or an image is transmitted from the website server back to the user, the
6    data has traveled in interstate commerce."); *United States v. Carroll*, 105 F.3d 740, 742
7    (1st Cir. 1997) ("Transmission of photographs by means of the Internet is tantamount to
8    moving photographs across state lines and thus constitutes transportation in interstate
9    commerce."); *United States v. Runyan*, 290 F.3d 223, 239 (5th Cir. 2002) (agreeing with
10   First Circuit's holding in *Carroll* in the context of a case under 18 U.S.C. § 2251); *United*
11   *States v. Gouin*, No. CR05-433RSL, 2008 WL 1886158, at *2 (W.D. Wash. Apr. 24,
12   2008) ("[T]he Internet transmission of the visual depictions [of child pornography] meets
13   the statutory definition of 'transported in interstate commerce.'").

14       **F.    Interstate Nexus and Attempt**

15       Count 1, production of child pornography, and Count 2, distribution of child
16   pornography, rely in part on a theory of attempt, as the United States will argue that
17   Barnes committed the completed offense, but will also argue attempt as an alternative
18   theory of criminal liability.

19       For the attempt theory, there is no interstate nexus requirement.  As courts have
20   held, the "interstate nexus" requirement in the federal statutes is "purely a prerequisite for
21   federal jurisdiction [rather than] conduct."  *United States v. Sturm,* 673 F.3d 1274, 1282–
22   83 (10th Cir. 2012).  Accordingly, the interstate nexus in federal child pornography cases
23   is met when the images are transferred between state lines, regardless of whether the
24   defendant had anything to do with their transport.  *United States v. Lynn*, 636 F.3d 1127,
25   1136 (9th Cir. 2011).  The defendant does not even need to know that the images have
26   been transported across state lines, or by a facility or means of interstate commerce.
27   *United States v. Warner,* 614 Fed. App'x 575, 577 (3d Cir. 2015) (noting that production
28   of child pornography may be proven without showing any *mens rea* with respect to

Government's Trial Brief – 15
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  interstate nexus); *United States v. Chambers,* 441 F.3d 438, 450 (6th Cir. 2006) (same);

2  *see also United States v. Feola*, 420 U.S. 671, 677 n.9 (1975) ("The existence of the fact

3  that confers federal jurisdiction need not be one in the mind of the actor at the time he

4  perpetrates the act made criminal by the federal statute.").  Thus, in connection with the

5  attempted production of child pornography charges, the United States need not prove any

6  *mens rea* with respect to interstate nexus.  Specifically, the United States does not need to

7  prove that Barnes knew or intended that the images he sought to produce or distribute

8  would be produced or distributed using materials that had traveled in interstate commerce

9  or by facilities of interstate commerce.

10 ## V.   THE GOVERNMENT'S CASE-IN-CHIEF

11 ### A.   Government Witnesses

12 The government expects to call the following witnesses and may identify

13 additional witnesses as appropriate.  Although it has listed seven witnesses below, it is

14 likely that only the first four witnesses will be called to testify:

15 Queensland Police Service Detective Stuart Butler

16 Homeland Security Special Agent Reese Berg

17 Homeland Security Special Agent Gabe Stajduhar

18 K.T. (mother of J.T.)

19 Homeland Security Special Agent Alan Heng

20 Homeland Security Special Agent Jayme McFarland

21 Homeland Security Special Agent Mike Wawrzycki

22 ### B.   Stipulations

23 The parties will enter a stipulation related to the location of manufacture of certain

24 digital devices, and that stipulation will be offered into evidence as a government exhibit.

25 ### C.   Expert Witnesses

26 The government intends to call SA Gabe Stajduhar, a certified forensic examiner

27 who conducted the forensic examination of the digital devices seized from Barnes.

28 Among other things, the government expects to elicit testimony concerning his forensic

Government's Trial Brief – 16
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

examination, including, a general overview of the technology/methodology used, his

acquisition of data and files from the devices, the accuracy of the data extracted from

Barnes' devices and offered in exhibits, the significance of metadata (date, time, file,

path) associated with the child exploitation files produced and possessed by Barnes.

SA Stajduhar was also present during the search and is likely to provide fact testimony

concerning the evidence seized during the search.  As such, the government has proposed

a jury instruction that addresses the hybrid nature of his testimony.

### D.    Defense Experts.

The government has not received any notice that the defense intends to call expert

witnesses.

## VI.    EVIDENTIARY ISSUES

### A.    Admissibility of Barnes' Conversations with Law Enforcement

The government intends to elicit testimony from law enforcement witnesses

regarding statements made by Barnes and to introduce exhibits memorializing those

statements, including email messages and audio recordings.  Barnes's statements are

admissible as statements of a party opponent pursuant to Rule 801(d)(2)(A).

The statements of the other speakers are admissible for a variety of non-hearsay

purposes, rather than for the truth of the matters asserted by those speakers.  Generally,

the statements by other speakers are offered to put Barnes' statements in context.  *See*

*United States v. Whitman*, 771 F.2d 1348, 1352 (9th Cir. 1985); *United States v. Tolliver*,

454 F.3d 660, 666 (7th Cir. 2007) ("Statements providing context for other admissible

statements are not hearsay because they are not offered for their truth"); *United States v.*

*Barone*, 913 F.2d 46, 49 (2d Cir. 1990) (concluding that the district court properly

admitted evidence of an informant's recorded statements during a conversation with the

defendant where they were presented not for the truth of the matter asserted, but to

establish a context to assist the jury in understanding the defendant's recorded

admissions); *see also United States v. Davis*, 890 F.2d 1373, 1380 (7th Cir. 1989)

(finding that a third party's statements in an out-of-court recorded conversation with the

Government's Trial Brief – 17
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

defendant are admissible "as reciprocal and integrated utterance[s] between two parties for the limited purpose of putting the response of the defendant in context of making them intelligible to the jury and recognizable as admissions").

The statements made by the undercover QPS detective to Barnes are also relevant to the extent they show Barnes' knowledge and beliefs regarding the photographs of J.T. *See United States v. Boyd*, 640 F.3d 657, 664 (6th Cir. 2011) ("Statements offered to prove the listener's knowledge are not hearsay."); *United States v. Safari*, 849 F.2d 891, 894 (4th Cir. 1988) (same).  Here, statements made by the QPS detective to Barnes about the photographs of J.T., and Barnes' reaction to those statements, demonstrate Barnes' knowledge of lewd and lascivious nature of the photographs.

Finally, many of the statements made by law enforcement are not hearsay at all, because they do not contain assertions but, rather, are questions, conversational filler, or similar matters.  *See United States v. Torres,* 794 F.3d 1053, 1060–61 (9th Cir. 2015) (determining that questions are not hearsay unless offered to prove implied factual assertions).

### B.     Admissibility and Showing Child Pornography Images

The government intends to offer as evidence and display some of the child pornography that the defendant produced and possessed, and the filenames associated with some of those depictions.  The images and videos the government intends to introduce into evidence were extracted from Barnes' devices and will be presented to the jury so the members can properly examine the images to determine if they constitute child pornography.[3]  In addition, metadata associated with these files has been extracted, where relevant, and will be presented alongside as part of the government's exhibits.

With respect the visual depictions of J.T. that constitute child exploitation material, the government intends to admit and publish several still images and three videos.  The government expects to ask to publish the videos only once but will likely

---

[3] Defense counsel have met with government counsel on multiple occasions to review these contraband exhibits.

Government's Trial Brief – 18
*United States v. Barnes*, CR18-5141 BHS

1    need to review some of the still images with multiple witnesses, and seek to publish them

2    on multiple occasions.  The government also intends to offer and publish two still images

3    and three videos of child exploitation material that do not depict J.T.  The government

4    plans to seek permission to publish each of these only once.  The government further

5    plans to limit its presentation of the videos to the first twenty seconds of each and will

6    rely on SA Berg to describe what happens in the remainder.  The government intends to

7    admit and have available the full videos.

8           The government intends to present and publish these contraband images and

9    videos using a computer and projecting them on the courtroom monitors.  Before

10   publishing any contraband exhibit, the government intends to seek express permission

11   from the Court, regardless of whether that exhibit has been previously admitted.  Given

12   the sensitive and disturbing nature of these images and videos, the government

13   respectfully suggests that the Court permit the government to turn off the monitors that

14   face the gallery during the periods when contraband exhibits will be published.

15          These contraband exhibits are admissible under Federal Rule of Evidence 1002 as

16   original exhibits because they comprise information extracted from digital devices and

17   displayed in a readable format.  Under Rule 1002, "[f]or electronically stored

18   information, 'original' means any printout—or other output readable by sight—if it

19   accurately reflects the information.  An "original" of a photograph includes the negative

20   or a print from it."  Fed. R. Evid. 1001(d).  Thus, an accurate printout of computer data

21   always satisfies the best evidence rule.  *See Doe v. United States*, 805 F. Supp. 1513,

22   1517 (D. Haw. 1992).  According to the Advisory Committee Notes that accompanied

23   this Rule when it was first proposed, this standard was adopted for reasons of practicality.

24   While strictly speaking, the original of the photograph might be thought to be only the

25   negative, practicality and common usage require that any print from the negative be

26   regarded as original.   Similarly, practicality and usage confer the status of original upon

27   any computer printout.  *Advisory Committee Notes*, *Proposed Federal Rule of Evidence*

28   *1001(3) (1972)*.

Government's Trial Brief – 19
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    As to the number of visual depictions and number of times they will be presented

2    to the jury, the government is mindful of the potentially troubling nature of these exhibits.

3    But in particular with respect to those depictions of J.T., the government faces a high

4    burden and must be permitted to present the evidence in a manner that will be conducive

5    to meeting that burden.  Because J.T.'s face is not visible in many of these images and

6    videos, the government will necessarily have to rely on statements made by Barnes and

7    the identification of the items depicted in these photos and videos.  Moreover, the jury

8    will be tasked with determining whether these depictions of J.T. constitute "lascivious"

9    exhibitions of her genitals or pubic area.  Given the high burden and the need to establish

10    Barnes's mental state, the government should be given wide latitude in deciding how

11    often and how best to present these contraband exhibits to the jury.  Indeed, since the

12    government's burden is extremely high—as the defense is expected to argue in its

13    closing—the government should "not be restricted [at trial] to a modest quantum of

14    evidence that will support the indictment."  *United States v. Gallo*, 543 F.2d 361, 365

15    (D.C. Cir. 1976).

16    Furthermore, files names that are indicative of child pornography are highly

17    relevant to proving a defendant's intent and knowledge.  *See, e.g.*, *United States v.*

18    *Ganoe*, 538 F.3d 1117, 1123 (9th Cir. 2008) (noting that titles of child pornography files

19    are relevant to rebut the defendant's lack of intent defense); *United States v. Becht*,

20    267 F.3d 767, 774 (8th Cir. 2001) (concluding that the defendant knowingly possessed

21    child pornography since he had to view either the images or their explicit file names

22    when sorting the files on his computer).

23    **C.    Computer Evidence**

24    In this case, the government intends to introduce documents and testimony

25    regarding some of the files that have been extracted from Barnes' digital devices,

26    including file names, location, and metadata.  The standard for authenticating computer

27    records is the same for authenticating other records and does not vary simply because the

28    record happens to be originally in electronic form.  *United States v. Vela*, 673 F.2d 86, 90

Government's Trial Brief – 20
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   (9th Cir. 1982).  The witness who testifies to the authenticity of the computer record need

2   not have special qualifications and need not have programmed the computer or even

3   understand the technical operation of a computer.  *United States v. Salgado*, 250 F.3d

4   438, 453 (6th Cir. 2001) ("[I]t is not necessary that the computer programmer testify in

5   order to authenticate computer-generated records."), *superseded by statute on other*

6   *grounds*, *United States v. Ednie*, 707 Fed. App'x 366, 371 (6th Cir. 2017).  Instead, the

7   witness need only have first-hand knowledge of the facts to which they testify, such as

8   examining or seizing the computer from which the records were obtained.  *United States*

9   *v. Whitaker*, 127 F.3d 595, 601 (7th Cir. 1997).

10   **D.     Summary Exhibit**

11        The government will use and offer three summary presentations as exhibits, all

12   containing images of child pornography found on Barnes' devices or on the photo-

13   sharing website.  Federal Rule of Evidence 611(a), addressing the Mode and Order of

14   Examining Witnesses and Presenting Evidence, gives the Court great discretion in what a

15   witness may use during testimony so as to "(1) make [the presentation] effective for

16   determining the truth, [and] (2) avoid wasting time."  *See also United States v. Gardner*,

17   611 F.2d 770,776 (9th Cir. 1980) (summary chart admissible in tax evasion case under

18   Rule 611(a)); *United States v. Paulino*, 935 F.2d 739, 752–54 (6th Cir. 1991) (testimony

19   of non-expert summary witness regarding cash generated from cocaine sales in drug

20   conspiracy case admissible under Rule 611(a) where trial court gave limiting instruction

21   and defense had full opportunity to cross-examine), *superseded by statute on other*

22   *grounds*, *United States v. Caseslorente*, 220 F.3d 727, 735–36 (6th Cir. 2000); *United*

23   *States v. Scales*, 594 F.2d 558, 563–64 (6th Cir. 1979) (summaries of testimonial

24   evidence designed "to aid the jury in its examination of the evidence already admitted"

25   are authorized by Rule 611(a)); 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's

26   Evidence, ¶ 1006[03] (summary "prepared by a witness from his own knowledge to assist

27   the jury in understanding or remembering a mass of details is admissible, not under Rule

28   1006, but under such general principles of good sense as are embodied in Rule 611(a)").

Government's Trial Brief – 21
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  The substantive content must be authenticated, but that may be done by the summary

2  witness, if the witness has reviewed the underlying evidence. Fed. R. Evid. 901; *United*

3  *States v. Soulard*, 730 F.2d 1292, 1299 (9th Cir. 1984).

4      The summary the government intends to offer as an exhibit has been provided to

5  defense counsel in advance of trial and all underlying documents—which consist

6  primarily of child pornography found on Barnes' devices—have been made available to

7  defense counsel for viewing.

8      **E.      Cross-Examination of the Defendant**

9      A defendant who testifies at his trial may be cross examined as to all matters

10 reasonably related to the issues he puts in dispute during cross examination.  A defendant

11 has "no right to avoid cross examination on matters which call into question his claim of

12 innocence."  *United States v. Miranda-Uriarte*, 649 F.2d 1345, 1353–54 (9th Cir. 1981).

13     **F.      Evidence of the Defendant's Character**

14     Neither the Defendant's character nor any trait of the Defendant's character is an

15 essential element of the crimes charged in the Indictment.  Thus, the defense may not

16 introduce any evidence of specific instances of conduct (*e.g.*, awards, commendations,

17 lack of previous sex offense charges) that would reflect favorably on him.  *United States*

18 *v. Solomon*, 686 F.2d 863, 873–74 (11th Cir. 1982) (disallowing, among other thing,

19 questions regarding the defendant's family and military service).  In the event that the

20 Defendant attempts to call character witnesses to testify on his behalf, the government

21 will seek leave to provide additional briefing and argument on this issue.

22     **G.      Photographs.**

23     The government expects to offer photographs of various items and locations

24 associated with the case.  These exhibits are admissible if a witness testifies that they are

25 accurate representations of what they are intended to depict.  *United States v. Brannon*,

26 616 F.2d 413, 416–17 (9th Cir. 1980) (concluding that evidence that photographs

27 accurately depicted the scene provided a sufficient foundation for admission under Rule

28 901(a).

Government's Trial Brief – 22
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## I.     POSSIBLE DEFENSES

The Defendant has not given notice of any defense for which the Federal Rules of Criminal Procedure require notice.  Therefore, the government would move to bar any such defense if it were raised during trial.

## II.     RECIPROCAL DISCOVERY

To date, the government has provided nearly 600 pages of discovery to the defense.  Since the inception of this prosecution, the United States has made available for the defense review all of the items of evidence, whether intended to be used as trial exhibits or not, over which the government has control or custody.  Defense counsel has reviewed the child pornography files in this matter.  The United States has not received any reciprocal discovery from the defense and will seek to exclude any evidence offered during the course of trial that should have been provided previously, pursuant to Rule 16(d)(2) of the Federal Rules of Criminal Procedure.

## VII.     ASSET FORFEITURE

In the Indictment, the United States Attorney gave notice that if the Defendant is convicted of the underlying offenses, it is the intention of the United States of America to seek forfeiture of the property listed below:

a.     One grey/black LEXAR thumb drive, seized from DONNIE BARNES, SR. on or about March 6, 2018;

b.     One white Apple iPhone 8 Plus (S/N F2LW22WPJLLN), seized from DONNIE BARNES, SR. on or about March 6, 2018; and

c.     Any and all images of child pornography, in whatever format and however stored.

*See* Dkt. No. 13.

## A.     Forfeiture Phase of Trial

Using the evidence admitted at trial and any additional evidence admitted during the forfeiture phase, the Court must determine if there is a nexus between the crime and the seized asset.  Rule 32.2(b)(1)(A) & (B) provide that "the court must determine whether the government has established the requisite nexus between the property and the

Government's Trial Brief – 23
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  offense . . . [and that this] . . . determination may be based on evidence already in the

2  record . . . and on any additional evidence or information submitted by the parties and

3  accepted by the court as relevant and reliable."

4       The forfeiture phase of the trial is conducted in much the same manner as the

5  criminal phase—that is, the government introduces evidence linking the property to the

6  crime, the defense may offer evidence in rebuttal, and counsel make closing arguments.

7  *See United States v. Arbolaez*, 450 F.3d 1283, 1294–95 (11th Cir. 2006) (reversing

8  forfeiture judgment where defense counsel requested but was denied opportunity to put

9  on evidence and argue to the jury in forfeiture phase of the trial).  Most of the evidence

10 relating to the forfeitability of the property will already be in the record from the criminal

11 phase of the trial and counsel may simply refer to it without having to offer it in evidence

12 a second time.  *See United States v. Sabhnani*, 599 F.3d 215, 262–63 (2d Cir. 2010)

13 (forfeiture may be based on testimony in the record from the guilt phase of the trial,

14 including evidence of the harm done to the victims); *United States v. Capoccia*, 503 F.3d

15 103, 109 (2d Cir. 2007) (the court may rely on evidence from the guilt phase of the trial,

16 even if the forfeiture is contested; it is not necessary for the government to re-offer that

17 evidence in the forfeiture proceeding).

18      *1. Bifurcation*

19      Trials in cases in which criminal forfeiture is sought are "bifurcated" into a

20 criminal phase and forfeiture phase.  Even before Rule 32.2 was adopted, the

21 United States Court of Appeals for the Ninth Circuit held that such bifurcation was

22 required in any case in which a judgment of criminal forfeiture was being sought.  *See*

23 *United States v. Feldman*, 853 F.2d 648, 662 (9th Cir. 1988) ("We therefore exercise our

24 supervisory power to hold that trial courts should bifurcate forfeiture proceedings from

25 ascertainment of guilt, requiring separate jury deliberations and allowing argument of

26 counsel").

27      This practice of "bifurcation" is embodied in Fed. R. Crim. P. 32.2(b)(1).  The

28 Rule provides in pertinent part that criminal forfeiture is to be determined "[a]s soon as

Government's Trial Brief – 24
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   practical after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is

2   accepted, on any count in an indictment or information regarding which criminal

3   forfeiture is sought."  Fed. R. Crim. P. 32.2(b)(1)(A).  Rule 32.2 further provides that

4   "the court must determine before the jury begins deliberating whether either party

5   requests that the jury be retained to determine the forfeitability of specific property if it

6   returns a guilty verdict."  Fed. R. Crim. P. 32.2(b)(5)(A).

7       ***2.  Hearsay is admissible.***

8       Like in a sentencing hearing, hearsay is admissible in the forfeiture phase.

9   Rule 32.2(b)(1)(B) provides that "[t]he Court's determination may be based on evidence

10  already in the record . . . and on any additional evidence or information submitted by the

11  parties and accepted by the court as relevant and reliable."  Hearsay is admissible because

12  the forfeiture hearing is considered to be part of the sentencing phase of the trial.  *United*

13  *States v. Creighton*, 52 Fed. App'x 31, 35–36 (9th Cir. 2002) (hearsay is admissible at

14  sentencing and therefore may be considered in the forfeiture phase).

15      ***3.  The defendant may not re-litigate a finding of guilt.***

16      The defendant may not use the forfeiture phase of the trial to re-litigate the legality

17  of his conduct.  Rather, the sole issue is whether there is a nexus between the property

18  and the offense for which the defendant was convicted.  *See United States v. Warshak*,

19  631 F.3d 266, 331 (6th Cir. 2010) (affirming district court's refusal to let defendant

20  introduce evidence tending to show his conduct was not illegal; in the forfeiture phase,

21  legality is no longer an issue; sole issue is nexus between conduct and the offense).

22      ***4.  The government has the burden of proof.***

23      The government has the burden of proof and must establish a nexus between the

24  assets to be forfeited and the offenses committed by the defendant.  The standard of proof

25  is proof by a preponderance of the evidence.  *See Libretti v. United States*, 516 U.S. 29

26  (1995) (criminal forfeiture is part of the sentence and not a substantive element of

27  offense, so a preponderance of the evidence standard applies); *United States v. Shryock*,

28  342 F.3d 948, 991 (9th Cir. 2003); *United States v. Martin*, 662 F.3d 301, 307 (4th Cir.

Government's Trial Brief – 25
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  2011) (the government must establish a nexus between the property for which it is

2  seeking forfeiture and the crime by a preponderance of the evidence); *United States v.*

3  *Garcia-Guizar*, 160 F.3d 511, 518 (9th Cir. 1998) (preponderance standard is

4  constitutional because criminal forfeiture is not a separate offense, but only an additional

5  penalty for an offense that was established beyond a reasonable doubt).

6  **B.     Statutory Authority for Forfeiture in this Case**

7  Title 18 U.S.C. § 2253 provides that a person convicted of an offense under this

8  chapter involving a visual depiction described in Section 2252 of this chapter, shall

9  forfeit to the United States such person's interest in:

10      (1)    any visual depiction described in section . . . 2252 . . .

11            of this chapter, or any book, magazine, periodical,
          film, videotape, or other matter which contains any

12            such visual depiction, which was produced,
          transported, mailed, shipped or received in violation of

13            this chapter;

14            [ . . . ]

15      (3)    any property, real or personal, used or intended to be

16            used to commit or to promote the commission of such
          offense or any property traceable to such property.

17

18  The thumb drive and iPhone listed above may be subject to forfeiture pursuant to

19  18 U.S.C. § 2253 if the defendant is convicted of the charged offenses of Production of

20  Child Pornography in violation of 18 U.S.C. § 2251(a), (e) as charged in Count One,

21  Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a)(2), (b)(1), as

22  charged in Count Two (2), and Possession of Child Pornography in violation of 18 U.S.C.

23  § 2252(a)(4), (b)(2), as charged in Count Three (3) of the Indictment.  *See* Dkt. No. 13.

24  Section 2253 provides that a person convicted of a violation of Title 18, United States

25  Code, Chapter 109A, shall forfeit to the United States such person's interest in "any

26  property, real or personal, used or intended to be used to commit or to promote the

27  commission of such offense."  18 U.S.C. § 2253(a)(3).  Criminal forfeiture is a form of

28

Government's Trial Brief – 26
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    punishment that is imposed as part of the defendant's criminal sentence. *Libretti*,

2    516 U.S. at 39–40.

3        **C.    Ancillary Claims**

4        The Court should not determine, at this stage of the proceeding, issues of

5    ownership, such as whether a non-defendant third-party has an ownership interest in the

6    property, or even whether the property belongs to a third-party instead of the defendant.

7    Fed. R. Crim. P. 32.2(b)(2)(A).  Rule 32.2(b)(2)(A) provides that:

8            If the court finds that property is subject to forfeiture, it must
             promptly enter a preliminary order of forfeiture . . . without
9            regard to any third party's interest in the property.
             Determining whether a third party has such an interest must
10           be deferred until any third party files a claim in an ancillary
             proceeding under Rule 32.2(c).
11

12   Persons other than the defendant may claim an interest in the properties that the

13   government is seeking to forfeit.  Any such third-party claims are not relevant to the

14   forfeiture phase at trial but will be taken into account later by this Court in a separate

15   proceeding.  Fed. R. Crim. P. 32.2(b)(2)(A).  At this trial, we are only asking the Court to

16   forfeit the defendant's interest, not third-party interests, in the properties.

17       The Advisory Committee Notes to Rule 32.2(b) likewise make clear that all issues

18   of ownership are to be deferred until the post-conviction/post-forfeiture "ancillary

19   hearing" provided for in 21 U.S.C. § 853(n).  *See* Advisory Committee Note to Fed. R.

20   Crim. P. 32.2 (2000 Adoption) Subdivision (b).

21       Additionally, the criminal defendant "has no standing to object to the forfeiture on

22   the ground that the property belong[s] to someone else." *Id.*  Any claims of third-party

23   ownership are to be resolved after sentencing at an ancillary hearing.  *See generally*

24   *Sunrise Acad. v. United States*, 791 F. Supp. 2d 200, 204 (D.D.C. 2011).

25       **IX.    CONCLUSION**

26       The United States submits this trial brief to inform the Court as to the significant

27   legal issues that may arise during trial.  It reserves the right to offer alternative arguments

28

Government's Trial Brief – 27
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   if these issues are subject to pretrial motions, and to raise additional legal issues during

2   the course of the trial.

3        DATED this 18th day of October, 2019.

4                                          Respectfully submitted,

5

6                                          BRIAN T. MORAN
                                           United States Attorney
7

8                                          */s/ Matthew Hampton*
9                                          MATTHEW P HAMPTON

10                                         */s/ Lyndsie Schmalz*
11                                         LYNDSIE R. SCHMALZ

12                                         Assistant United States Attorneys
13                                         700 Stewart Street, Suite 5220
                                           Seattle, WA 98101-1271
14                                         Phone: (206) 553-6677
15                                         Fax: (206) 553-0755
                                           E-mail: Matthew.Hampton@usdoj.gov
16                                                   Lyndsie.R.Schmalz@usdoj.gov

17

18

19

20

21

22

23

24

25

26

27

28

Government's Trial Brief – 28
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s).  I hereby certify that I have served the attorney(s) of record for the defendant(s) that are non CM/ECF participants via e-mail and/or telefax.

*s/ Lissette Duran*
LISSETTE DURAN
Paralegal Specialist
United States Attorney's Office
Western District of Washington
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone:    (206) 553-7234
Fax:              (206) 553-2502
E-mail:  Lissette.I.Duran@usdoj.gov

Government's Trial Brief – 29
*United States v. Barnes*, CR18-5141 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970